IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 24-cr-00305-GPG-JMC

UNITED STATES OF AMERICA,

      Plaintiff,

v.

BENJAMIN VINCENT SMITH,

      Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Jeffrey K. Graves and Alecia L. Riewerts, Assistant United States Attorneys for the District of Colorado, and the defendant, Benjamin Vincent Smith, personally and by counsel, Martin Stuart, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

## I. AGREEMENT

### A. Defendant's Plea of Guilty:

The defendant agrees to: (1) waive indictment and plead guilty to Counts One, Two, and Three of an Information charging (i) one count of Production of Child Pornography, in violation of 18 U.S.C. § 2251 and (e), naming Minors #1-10 and #12-37 as victims; (ii) one count of Coercion and Enticement of Minors, in violation of 18 U.S.C. § 2422(b), naming Minors #1, 6, 7, 12, 16, 18, 19, 21, 23, 25 and 31 as victims; and (iii) one count of Attempted Coercion and Enticement of a Minors, in violation of 18 U.S.C. §

Page 1 of 25

EXHIBIT

1

2422(b), naming Minors #2, 3, 11, 17, 20, 22, 28, and 30 as victims; (2) pursuant to

Fed. R. Crim. P. 11(c)(1)(C), stipulate that the sentence of imprisonment shall be

between 240 months and 480 months, as explained in detail below; (3) pursuant to Fed.

R. Crim. P. 11(c)(1)(C), stipulate that the sentence of supervised release shall be a term

of life; (4) reserve the right to argue for any sentence consistent with the above-

described stipulation; (5) abandon certain property and not contest forfeiture, as more

fully described below; (6) be liable for restitution in an amount to be determined at

sentencing; and (7) waive certain appellate and collateral attack rights, as explained in

detail below.

**B. Government's Obligations:**

The government agrees to (1) move to dismiss the Superseding Indictment [ECF

#27] with prejudice at sentencing; (2) agrees not to bring any additional charges against

the defendant in the District of Colorado based on information in the government's

possession up to the date of the execution of this plea agreement; (3) pursuant to Fed.

R. Crim. P. 11(c)(1)(C), stipulate that the sentence of imprisonment shall be between

240 months and 480 months, as explained in detail below; (4) pursuant to Fed. R. Crim.

P. 11(c)(1)(C), stipulate that the sentence of supervised release shall be a term of life;

and (5) reserve the right to argue for any sentence consistent with the above-described

stipulation.

Should the plea of guilty be vacated on the motion of the defendant, the

government may, in its sole discretion, move to reinstate any or all of the counts

dismissed pursuant to this agreement and potentially file a Second Superseding

Indictment.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

### C. Rule 11(c)(1)(C) Disposition

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agree that a sentence of imprisonment between 240 months and 480 months is the appropriate disposition of this case. The parties agree that this negotiated compromise reflects, among other factors, the consensus of the named victims,[1] the probable impact on the named victims in testifying at trial, the strength of the government's case, and the sentencing guideline range if the defendant is convicted at trial.

This stipulation only applies to the term of imprisonment and supervised release and the Court has the discretion to impose any other statutorily authorized penalty. The parties understand that once the Court accepts the plea agreement, the Court is required to enter the above-described sentence. The parties further understand that, if the Court informs the parties that it intends to impose a sentence different from the above-described sentence, either party has the right to withdraw from the plea agreement.

---

[1] The government notes that there are 37 charged victims and that not all victims agree with this proposed disposition. The government has advised those victims that they have the right to address the Court at sentencing and object to this disposition in writing and/or orally.

### D. Defendant's Waiver of Appeal:

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1)    the sentence of imprisonment exceeds 480 months (40 years); or

(2)    the government appeals the sentence imposed.

If the first criterion applies, the defendant may appeal only the issue of how his sentence exceeded forty years. But if the latter criterion applies, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1)    the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2)    the defendant was deprived of the effective assistance of counsel; or

(3)    the defendant was prejudiced by prosecutorial misconduct.

The government agrees not to argue a procedural bar to a prosecutorial misconduct claim raised in a § 2255 petition based on the failure of the defendant to raise that issue on direct appeal.

The defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

### E. Forfeiture of Assets:

The defendant admits the forfeiture allegations. The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 2253 and 2428, whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees, or elsewhere. The assets to be forfeited specifically include, but are not limited to, a Black Apple iPhone 14 Pro Max in green case, IMEI: 350923383771382. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture

action. The defendant understands that pursuant to 18 U.S.C. § 983, the seizing

agency is required to send notice in non-judicial civil forfeiture matters. Having been

advised of said rights regarding notice, the defendant hereby knowingly and voluntarily

waives his rights to notice being sent within the time frames in 18 U.S.C. § 983 and to

having the property returned to him/her if notice is not sent within the prescribed time

frames. The defendant also hereby agrees that the forfeiture described herein is not

excessive and, in any event, the defendant waives any constitutional claims that the

defendant may have.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any

fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon

the defendant in addition to forfeiture.

### F. Abandonment of Property:

The defendant agrees that the below-described property, which was seized from

the defendant for evidentiary purposes, and which is currently in the custody or control

of Homeland Security Investigations (HSI), was lawfully seized and that it is evidence,

contraband, or fruits of the crimes to which the defendant is pleading guilty. The

defendant, as sole and rightful owner, relinquishes and abandons all claims, title, and

interest the defendant has in such property with the understanding and consent that HSI

may dispose of the property without further obligations. The specific property includes:

a Black Apple iPhone 14 Pro Max in green case, IMEI: 350923383771382.

### G. Restitution:

The defendant understands that, pursuant to 18 U.S.C. §§ 2259 and 2429, the

Court must order restitution for the full amount of the victims' compensable losses. For

purposes of 18 U.S.C. § 2259, the term "victim" is defined in 18 U.S.C. § 2259(c)(4).
For purposes of 18 U.S.C. § 2429, the term "victim" is defined in 18 U.S.C. §
2429(d).   For both 18 U.S.C. §§ 2259 and 2429, the term "full amount of the victims'
losses" is defined in 18 U.S.C. § 2259(c)(2).   The amount of loss sustained by each
victim will be determined during the preparation of the presentence investigation report.
The defendant understands the amount of Court ordered restitution will not be a basis to
withdraw his guilty plea.

The parties stipulate that Minors #1 through #37 are "victims" for the purposes of
calculation of restitution under 18 U.S.C. §§ 2259, 2429, and 3771.

With respect to restitution, the defendant agrees to fully: (1) cooperate in the
investigation of the amount of loss and the identification of victims; (2) comply with any
restitution order entered at the time of sentencing; (3) cooperate in all efforts to collect
restitution by any means deemed appropriate by the United States.

The defendant understands that neither personal economic circumstances or
resources, nor the fact that the victims have, or are entitled to receive compensation for
their injuries from the proceeds of insurance or any other source, are grounds the Court
may use to deny restitution.

The defendant understands that the imposition or payment of restitution will not
restrict or preclude the filing of any civil suit or administrative action.  The defendant
agrees that any restitution imposed will be non-dischargeable in any bankruptcy
proceeding and the defendant will not seek a discharge of the restitution obligation.

## II.  ELEMENTS OF THE OFFENSE

The parties agree that the elements of Production of Child Pornography are as
follows:

**Count One**:  *Production of Child Pornography, in violation of 18 U.S.C. § 2251(a)*

    *First:*        At the time alleged, the victim was under the age of 18 years old;

    *Second:*    The defendant employed, used, persuaded, induced, enticed, or coerced the minor victim to engage in sexually explicit conduct;

    *Third:*     The defendant acted with the purpose of producing a visual depiction of such conduct; and

    *Fourth:*   the visual depiction was produced using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

"Minor" means any person under the age of eighteen years.[2]

"Child pornography" is defined as any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct.[3]

"Visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.[4]

"Sexually explicit conduct" means actual or simulated:

    1.       sexual intercourse, including genital-genital, oral-genital, anal-genital, or

---

[2] 18 U.S.C. § 2256(1).
[3] 18 U.S.C. § 2256(8)(A).
[4] 18 U.S.C. § 2256(5).

oral-anal, whether between persons of the same or opposite sex; or

2.  bestiality; or

3.  masturbation; or

4.  sadistic or masochistic abuse; or

5.  lascivious exhibition of the anus, genitals, or pubic area of any person.[5]

The parties agree that the elements of Coercion and Enticement of a Minor are as follows:

**Count Two**: *Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b)*

*First:*    The defendant knowingly persuaded, induced, enticed, or coerced;

*Second*:    Any individual younger than 18 years old;

*Third*:    To engage in any sexual activity for which any person can be charged with a criminal offense; and,

*Fourth*:    The defendant used a facility of interstate or foreign commerce to commit the crime.

The parties agree that the elements of Attempted Coercion and Enticement of a Minor are as follows:

**Count Three**: *Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b)*

*First:*    The defendant knowingly attempted to persuade, induce, entice, or coerce;

*Second*:    Any individual younger than 18 years old;

---

[5] 18 U.S.C. § 2256(2)(A).

*Third*:    To engage in any sexual activity for which any person can be charged with a criminal offense; and,

*Fourth*:    The defendant used a facility of interstate or foreign commerce to commit the crime.

Sexual Assault (Greater Than Ten Year Age Difference) as defined in Colorado Revised Statute § 18-3-402(1)(e) is a "sexual activity for which any person can be charged with a criminal offense." The parties agree that a person can be charged with a criminal offense, specifically Colo. Rev. Stat. § 18-3-402(1)(e), when the person engages in sexual intercourse or oral sex with a minor if the minor is at least fifteen years of age but less than seventeen years of age and the person is at least ten years older than the minor and is not the spouse of the minor under Colorado state law. Additionally, Sexual Assault (Minor Less Than 15) as defined in Colorado Revised Statute § 18-3-402(1)(d) is also a "sexual activity for which any person can be charged with a criminal offense." The parties agree that a person can be charged with a criminal offense, specifically Colo. Rev. Stat. § 18-3-402(1)(d), when the person engages in sexual intercourse or oral sex with a minor if the minor is less than fifteen years of age and the person is at least four years older than the minor and is not the spouse of the minor under Colorado state law.

## III.  **STATUTORY MAXIMUM SENTENCE**

The maximum sentence for a violation of Count One of the Information (Production of Child Pornography) is as follows: not more than 30 years' imprisonment and not less than fifteen years imprisonment; not less than five years of supervised release and not more than life supervised release; a maximum fine of $250,000; not

more than a $50,000 special assessment under the Amy, Vicky, and Andy Child

Pornography Victim Assistance Act (AVAA);  $100 mandatory victim's fund assessment

fee; and restitution in an amount to be determined at the time of sentencing.

The parties do not believe the following provisions are applicable.  However,

pursuant to 18 U.S.C. § 3559(e), if the defendant has a prior sex conviction in which a

minor was the victim, and because this offense constitutes a federal sex offense in

which a minor is the victim, the mandatory sentence is not less than life imprisonment,

not more than a $250,000 fine, or both.  If that provision does not apply, and if the

defendant has a prior conviction under Chapters 110, 71, 109A, 117, Title 18 section

1591, or under section 920 of title 10 of the United States Code (article 120 of the

Uniform Code of Military Justice), or under the law of any State relating to aggravated

sexual abuse, sexual abuse, or abusive sexual contact involving a minor or ward, or sex

trafficking of children, or the production, possession, receipt, mailing, sale, distribution,

shipment or transportation of child pornography, the penalty is not less than 25 years'

imprisonment, not more than 50 years' imprisonment; with two such convictions, the

penalty is not less than 35 years' imprisonment, not more than life imprisonment.  The

statutory maximum sentences described in this paragraph also include a term of

supervised release of not less than 5 years and up to a term of life; maximum fine

$250,000; restitution in an amount to be determined at the time of sentencing; and the

special assessments described above.

The maximum sentence for a violation of Counts Two and Three of the

Information (Coercion and Enticement and Attempted Coercion and Enticement) is as

follows: up to life imprisonment and not less than 10 years imprisonment; not less than

five years of supervised release and not more than life supervised release; a maximum

fine of $250,000; not more than a $50,000 special assessment under the Amy, Vicky,

and Andy Child Pornography Victim Assistance Act (AVAA); $100 mandatory victim's

fund assessment fee; and restitution in an amount to be determined at the time of

sentencing. The parties do not believe the following provision is applicable. However,

pursuant to 18 U.S.C. § 3559(e), if the defendant has a prior sex conviction in which a

minor was the victim, and because this offense constitutes a federal sex offense in

which a minor is the victim, the mandatory sentence is not less than life imprisonment,

not more than a $250,000 fine, or both.

## IV.    COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the

rights to possess firearms, vote, hold elected office, and sit on a jury.

The defendant has been advised and understands that, under the Sex Offender

Registration and Notification Act, a federal law, and pursuant to 18 U.S.C. § 3583(d),

upon his release from prison and as a condition of any supervised release, he will be

subject to federal and state sex offender registration requirements, and that those

requirements may apply throughout his life.  The defendant understands that he must

register as a sex offender and must keep the registration current with the state sex

offender registration agency in each of the following jurisdictions: where he was

convicted, where he resides, where he is employed, and where he is a student. The

defendant understands that the requirements for registration include providing his

name, residence address, the names and addresses of any places where he is or will

be an employee or a student, and information relating to intended travel outside the

United States, among other information. The defendant further understands that the

requirement to keep the registration current includes informing at least one jurisdiction in which he resides, is an employee, or is a student not later than three business days after any change of name, residence, employment, or student status. The defendant shall comply with requirements to periodically verify in person his sex offender registration information. The defendant has been advised, and understands, that failure to comply with these obligations subjects him to prosecution for violations of applicable state law or 18 U.S.C. § 2250, a federal law, which is punishable by a fine or imprisonment, or both. The defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following conviction.

## V.  STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct:

Benjamin Vincent Smith ("Defendant Smith") was born in June 1996. At the beginning of the relevant time (October 2022), Defendant Smith was 26 years old; at the

end of the relevant time (July 2024), Defendant Smith was 28 years old. Prior to July

2024, Defendant Smith taught music at Escalante Middle School in Durango, Colorado.

From approximately October 2022 through his arrest in July 2024, Defendant

Smith constructed an elaborate ruse for the purposes of producing child sexual abuse

materials ("CSAM")[6] and coercing and enticing children to engage in sexual activity with

him. Defendant Smith posed on the social media service SnapChat as a 16-year-old girl

named "Kristin" under the profile "MTNCHICK69." In that disguise, Defendant Smith

contacted dozens of male children in the vicinity of Durango. To further his ruse,

Defendant Smith sent the children photos of "Kristin" – naked pictures of a young-

looking girl. Defendant Smith then persuaded the minors to take photographs capturing

sexually explicit conduct of themselves and send those photos to Defendant Smith. The

sexually explicit conduct depicted in those photographs for each victim constituted

lascivious exhibition of the genitals, and/or pubic area.  Defendant Smith then kept

those photographs on his personal phone.

Further, disguised as "Kristin," Defendant Smith would often suggest meeting up

with the child he was chatting with for in person sexual activity, which Defendant Smith

described as a "gloryhole" sex act. For example, on multiple occasions, Defendant

Smith sent children the following: "It's always been a huge fantasy of mine, and I've

been feeling really kinky lately and figured out a way to do it in my car, and I think it

would be hot if you used it to cum down my throat." If the targeted child was interested,

Defendant Smith elaborated: "You'd just get in the back seat, I'd be waiting under the

gloryhole cover/ sheet, and I'd lean over, suck you, deepthroat, massage your balls with

---

[6] The term CSAM is identical in all respects to the term "child pornography" as that term is used at 18
U.S.C. § 2256(8).

my tongue, you throatfuck me, and I swallow, and then you leave." If the targeted child
was interested, the scheme ("the Gloryhole Ruse") generally went as follows:

- Defendant Smith emphasized that the anonymity of the sex act was part of the
  "kinky fantasy." Defendant Smith said that "Kristin" would not talk to the child.

- Always at night, Defendant Smith told the child to meet "Kristin" in a blue Subaru
  parked at an agreed location around Durango.

- Per Defendant Smith's instructions, the children would enter the Subaru through
  the back door where Defendant Smith would be concealed under a sheet inside.

- While concealed under the sheet, Defendant Smith would initiate oral sex on the
  children knowing that the children believed that Defendant Smith was a 16-year-
  old named Kristin.

- Defendant Smith took physical measures to perfect his disguise; *e.g.,* painting his
  nails, wearing a wig, and wearing prosthetic breasts.[7]

- Defendant Smith audio recorded many of these encounters on his personal cell
  phone.

The Defendant's scheme was detected as follows: on July 23, 2024, the Durango
Police Department received a report from Minor #30, a 16-year-old-male. Minor #30
said he and a friend, had been communicating with the profile MTNCHICK69 on
SnapChat. Minor #30 said that MTNCHICK69 had sent him nude photos of what
appeared to be a young girl. Minor #30 admitted that he had sent nude photos of
himself back. The conversation turned to sex and MTNCHICK69 asked to meet up for a

---

[7] Mr. Smith acknowledges the reports of some of the victims describing a wig and/or prosthetic breasts.
Mr. Smith denies that he ever wore a wig or prosthetic breasts as a disguise.  He admits that he would at
times paint his nails but asserts that the painting of his nails was not an attempt to disguise his identity.

"glory hole" blow job. MTNCHICK69 told Minor #30 to meet them at the parking lot for Chapman Hill in their blue Subaru. Minor #30 said that he showed up that evening and saw a blue Subaru Outback, which was the only car in the parking lot. Minor #30 said he opened of the door of the Subaru and saw what he believed to be a male covered up with a blanket. According to Minor #30, the individual's exposed hands and arms appeared to be a man's, even though the hand had painted, colorful nails and was wearing colorful bracelets. Minor #30 confronted the person under the sheet, but the concealed figure was able to pull the door closed and drive away.

Minor #30 memorized a portion of the license plate from the Subaru. The Durango Police used their in-town license plate reader to tie that partial plate to a Subaru Outback registered to Defendant Smith. Minor #30 also said that MTNCHICK69 had said they live next to the "skatepark." The sole skatepark in Durango is located directly next to Defendant Smith's address.

Based, in part, on the above, on July 25, 2024, the Durango Police Department obtained a search warrant to seize digital devices from Defendant Smith's residence, his car, and from his person. When officers executed the warrant, they found Defendant Smith's Subaru parked out-front with the matching plates. In the backseat of the Subaru, officers found a dark-colored sheet crumpled up. Law enforcement also seized multiple digital devices from Defendant Smith's residence.

On the same day, law enforcement located Defendant Smith at a church where Defendant Smith was teaching a band camp. Law enforcement seized Defendant Smith's personal phone and arrested Defendant Smith on state charges. In October 2024, the case was referred to federal law enforcement. Pursuant to a federal warrant,

law enforcement reviewed the contents of Defendant Smith's devices and the SnapChat messages for MTNCHICK69. That investigation enabled the interview of 37 victims of Defendant Smith's scheme, which showed the following:

Between October 2022 and July 2024, for Minors #1-10 and #12-37, when each minor was less than 18 years old and located in the State and District of Colorado, Defendant Smith, under the guise of being "Kristin," knowingly persuaded and enticed Minors #1-10 and #12-37 to produce visual depictions of sexually explicit conduct; and, per Defendant Smith's instructions, knowingly persuaded and enticed Minors #1-10 and #12-37 to send those visual depictions to him via the internet, which he received on his personal cell phone, a Black Apple iPhone 14 Pro Max in green case, IMEI: 350923383771382. The parties stipulate that Apple iPhones are manufactured outside the State and District of Colorado.

Defendant Smith used the Gloryhole Ruse by way of the internet to knowingly persuade and entice eleven of the minors to meet up with him and engage in sexual activity, as listed in Chart #1, below, and as charged in Count 2 of the Information. For each of the instances listed in Chart #1, the Defendant actually met up with the named victims and engaged in sexual activity, *i.e.,* Defendant Smith gave the minors oral sex and engaged in other sexual activity. Each of the instances listed in Chart #1 violated Colorado law because there was, at the least, greater than a ten-year age difference between Defendant Smith and the victim and Defendant Smith was not the spouse of any of the victims. *See* Colo. Rev. Stat. § 18-3-402(1)(d) and (e):

**Chart #1 – Count Two**

| Victim # | Date Range | Age | Multiple Occasions? |
|----------|------------|-----|---------------------|
| Minor #1 | Oct. 2022 to Jan. 2024 | Less than 17 | Yes |
| Minor #6 | Sept. 2023 and May 2024 | Less than 17 | Yes |

| Minor #7 | Oct. 2023 and Jan. 2024 | Less than 17 | Yes |
|----------|------------------------|--------------|-----|
| Minor #12 | Jan. 2024 | Less than 17 | No |
| Minor #16 | Jan. 2024 and July 2024 | Less than 17 | Yes |
| Minor #18 | Jan. 2024 | Less than 15 | No |
| Minor #19 | March 2024 to July 2024 | 12 | No |
| Minor #21 | March 2024 | Less than 17 | No |
| Minor #23 | May 2024 and July 2024 | Less than 15 | No |
| Minor #25 | May 2024 and July 2024 | Less than 15 | No |
| Minor #31 | April 2024 and July 2024 | Less than 15 | No |

Further, Defendant Smith attempted to use the Gloryhole Ruse by way of the internet to knowingly persuade and entice eight of the minors to meet up with him and engage in sexual activity, as listed in Chart #2, below, and as charged in Count 3 of the Information. For each of the instances listed in Chart #2, the Defendant attempted – but failed – to persuade the named victims to meet up with him to engage in sexual activity. If the sexual activity had occurred, each instance listed in Chart #2 would have violated Colorado law because there was, at the least, greater than a ten-year age difference between Defendant Smith and the victim. *See* Colo. Rev. Stat. § 18-3-402(1)(d) and (e):

### Chart #2 – Count Three

| Victim # | Date Range | Age |
|----------|-----------|-----|
| Minor #2 | Oct. 2022 to Aug. 2023 | Less than 17 |
| Minor #3 | May 2023 and May 2024 | Less than 17 |
| Minor #11 | Dec. 2023 and Feb. 2024 | Less than 17 |
| Minor #17 | Jan. 2024 and July 2024 | Less than 15 |
| Minor #20 | March 2024 and July 2024 | Less than 15 |
| Minor #22 | Spring 2024 and July 2024 | Less than 15 |
| Minor #28 | July 2024 | Less than 15 |
| Minor #30 | July 2024 | Less than 17 |

For each of the instances described in Counts Two and Three, the parties stipulate that the conduct occurred, at least in part, in the State and District of Colorado and the Defendant used a means and facility of interstate commerce, specifically the internet, to commit the crime.

## VI.    ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553.  In determining the particular sentence to be imposed, the Court is required to consider seven factors.  One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission.  In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines.  To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate.  The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range.  To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

**Count One of the Information**: *Production of Child Pornography, in violation of 18 U.S.C. § 2251(a)*

**Offense Level**

A.    The initial offense is calculated under §2G2.1(a), resulting in the base offense level is **32** for each of the 36 Production of Child Pornography Victims.

B.    Because Minors #4, 5, 13, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 28, 29, 31, 32, and 33 had attained the age of twelve years but had not

attained the age of sixteen years, under §2G2.1(b)(1)(B), the offense level

is *increased by two levels* to a level **34**.

C.    Because the offense involved the knowing misrepresentation of a

participant's identity to persuade, induce, entice, or coerce a minor to

engage in sexually explicit conduct and the offense involved the use of a

computer to persuade, induce, entice, or coerce a minor to engage in

sexually explicit conduct, under §2G2.1(b)(6), the offense level is

*increased by two levels* for each victim.

D.    Therefore, the offense level related to Minors #4, 5, 13, 15, 16, 17, 18, 19,

20, 21, 22, 23, 24, 25, 26, 28, 29, 31, 32, and 33 is **36**.  The offense level

related to Minor #1, 2, 3, 6, 7, 8, 9, 10, 12, 13, 14, 27, 30, 34, 35, 36, and

37 is **34**.

**Count Two**: *Coercion and Enticement of a Minor, in violation of 18 U.S.C. §
2422(b)*

**Offense Level**

E.    The initial offense is calculated under §2G1.3(a)(3), resulting in the base

offense level is **28**.

F.    Because the offense involved the knowing misrepresentation of a

participant's identity, under §2G1.3(b)(2), the offense level is *increased by

two levels* to a level **30**.

G.    Because the offense involved the use of a computer, under §2G1.3(b)(3),

the offense level is *increased by two levels* to a level **32**.

H.    Because the offense involved the commission of sexual acts, under

§2G1.3(b)(4)(A)(i), the offense is increased by two levels to a level **34**.

I.    The Cross Reference in §2G1.3(c)(1) applies to Minors #16, 18, 19, 21, 23, 25, and 31 because the resulting offense level under §2G2.1 is greater than that determined under §2G1.3. Therefore, the offense level related to these minor victims is **36**.

J.    The Cross Reference in §2G1.3(c)(1) does not apply to Minors #1, 6, 7, and 12, because the resulting offense level under §2G1.3 is equal to the offense level under §2G2.1. Therefore, the offense level related to these minor victims is **34**.

**Count Three**:  *Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b)*

**Offense Level**

K.    Under § 2X1.1(a), the base offense level is the same as the adjusted offense level for the completed acts, resulted in an offense level of **28**.

L.    Because the offense involved the knowing misrepresentation of a participant's identity, under §2G1.3(b)(2), the offense level is *increased by two levels* to a level **30**.

M.    Because the offense involved the use of a computer, under §2G1.3(b)(3), the offense level is *increased by two levels* to a level **32**.

N.    Because the offense involved the commission of sexual acts, under §2G1.3(b)(4)(A)(i), the offense is increased by two levels to a level **34**.

O.    The Cross Reference in §2G1.3(c)(1) applies to Minors #17, 20, 22, and 28 because the resulting offense level under §2G2.1 is greater than that determined under §2G1.3. Therefore, the offense level related to these minor victims is **36**.

P.  The Cross Reference in §2G1.3(c)(1) does not apply to Minors #2, 3, and
30, because the resulting offense level under §2G1.3 is equal to the
offense level under §2G2.1.  Therefore, the offense level related to these
minor victims is **34**.  The offense level related to Minor #11 (which does
not cross reference to §2G2.1) is also **34.**

Q.  Because the defendant completed all the acts the defendant believed
necessary for successful completion of the substantive offense, there is no
reduction in offense level under § 2X1.1(b)(1).

**Grouping Analysis**

R.  None of the offense levels relating to individual victims "group" under
§3D1.2. Pursuant to §2G2.1(d)(1) (for Count One) and § 2G1.3(d)(1) (for
Counts Two and Three), multiple count adjustments shall be applied as if
each minor were charged as a separate count. Thus, under §3D1.4, the
counts involve more than 5 "Units." Accordingly, five levels are added to
the highest offense level, resulting in an adjusted offense level of **41**.

**Acceptance of Responsibility**

The defendant should receive a *decrease of three levels* for timely
acceptance of responsibility under § 3E1.1(a) and (b).  The resulting
offense level therefore would be **38**.

**Pattern**

Because (1) the offenses of conviction were perpetrated against minors,
and are covered sex crimes; (2) neither §4B1.1 nor §4B1.5(a) applies; and
(3), the defendant engaged in a pattern of activity involving prohibited

sexual conduct, the offense level is *increased by five levels*, resulting in an
adjusted offense level of **43**.

**Criminal History**

A.    The parties understand that the defendant's criminal history computation
is tentative.  The criminal history category is determined by the Court
based on the defendant's prior convictions.  Based on the information
currently available to the parties, the parties estimate that the defendant's
criminal history category would be **I**.

**Imprisonment**

B.    The advisory guideline range of imprisonment resulting from an offense
level of **43** and any criminal history category is life imprisonment. The
statutory maximum penalty is up to life imprisonment. <u>NOTE</u>: if the Court
accepts the proposed disposition under Rule 11(c)(1)(C), the range of
imprisonment shall be between 240 months and 480 months.

**Fine**

C.    Pursuant to guideline § 5E1.2, assuming an offense level of **43**, the fine
range for this offense would be $50,000 to $500,000 plus applicable
interest and penalties.

**Supervised Release**

D.    Pursuant to guideline § 5D1.2(b)(2), the term of supervised release is up
to life.

**Restitution**

E.    Under 18 U.S.C. §§ 2259 and 2429, the defendant acknowledges that he shall be ordered to pay restitution.  The defendant acknowledges that the victims of the offense of conviction may submit restitution claims to Probation for consideration at sentencing.  Any dispute as to the proper amount of restitution shall be resolved by the court by a preponderance of the evidence, with the burden of demonstrating the amount of loss sustained by the victim as a result of the offense resting with the Government.

*    *    *    *

## VII.  ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement.  There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 1/28/26

_____
BENJAMIN VINCENT SMITH
Defendant

Date: 1/28/26

_____
MARTIN STUART
Attorney for Defendant

Date: 1-28-26

_____
JEFFREY GRAVES
Assistant U.S. Attorney

Date: 1-28-26

_____
ALECIA L. RIEWERTS
Assistant U.S. Attorney